Thank you. Good morning, Your Honors. May it please the Court. My name is Melissa Heuelsman and I'm here on behalf of Joy Barnhart. I'd like to reserve four minutes for reply. This case, from our viewpoint, is very simple and I think the briefing reflects that. Essentially the position of the defendant is that because Ms. Barnhart did not actually enter into the related to it. And we maintain that this is, frankly, an absurdity and would vitiate the rights of those who... And are you still arguing that you have a DTA claim? No, Your Honor. I'm sorry. Yes. No, Your Honor. The claim comes from that you can argue that the violations of the Deed of Trust Act constitute violations of other acts, including the Consumer Protection Act, consistent with the Freas decision. You're only maintaining your CPA. After Freas, you're letting the DTA claim go. That's correct, although we do also have a negligent and intentional misrepresentation claim as well. Okay. Now, did you preserve your CPA argument in your brief? Yes, Your Honor. That was the totality of what the argument was, is that she can pursue her CPA claims because... In your opening brief, CPA is referred to on page one and on page 19. That's the opening page and the last page without even a citation to the statute. So, Your Honor, the reason why I did that is because we did not... Because the court did not say that we couldn't pursue the CPA claims because it relied upon the Walker decision. And so Freas only... Sorry. Freas only got rid of the Deed of Trust Act claims and, in fact, then was the same as Walker in saying that you could pursue a CPA claim. That part of it was... We did not appeal that ruling because the court found that... But for the standing issue, Ms. Freas... Excuse me. Ms. Barnhart could have pursued her CPA claims. The problem is the district court threw out the whole thing. They didn't just dismiss part of it or you wouldn't be here. I agree with that. The court dismissed all your claims on the same... Basically on the same theory. Well, it did, Your Honor, only on standing. The court expressly said in the court order that if it had just been the question of whether or not she could pursue a CPA claim, that the Walker decision... When I had done the motion to certify the questions to the state Supreme Court, that's when the court came back and said, no, we're not going to because of Walker. Under Walker, Ms. Barnhart would be able to pursue her CPA claims even in light of there not being a completed non-judicial foreclosure, but then just basically said it was dismissing the entirety of the claims because of the standing issue. And that's what I said in the opening brief. I was not arguing about the Walker issues because I believe the district court ruled correctly on those. But you didn't make an argument in the alternative along the lines of what the Washington Supreme Court decided in Freas. That is, that even if you didn't have a DTA argument, you would still have a CPA argument. Well, I did. You did that in your briefing? In the original briefing. Plus. Well, no, I guess because I... Okay, perhaps I'm incorrect, but I thought the court's ruling on when it said no, Walker applied and Walker would preserve the CPA claim, but we're not going to address that issue because the case has been dismissed based on standing. The district court didn't engage in analysis regarding the CPA claim once it said Walker applied and Walker says you can still pursue a CPA claim. So any claims... So what Freas says is that any breaches of the Deed of Trust Act can be pursued based on any other legal theories. And what the court, district court said is, okay, and that's consistent with that portion of Walker, not the DTA portion of Walker. And so when the district court said, look, that would be the case, except that I'm going to dismiss your case irrespective of that because of standing. Are you alleging that the CPA violation is at its core a DTA violation? Yes, Your Honor. And that's... So that whether your appeal is directly a DTA appeal or a CPA appeal, it all comes down to whether there was a violation of the DTA because either you're arguing a straight up DTA appeal or you're arguing CPA only because of a DTA appeal. So we can just focus on the DTA. Is that correct? And that's how I phrased the appeal. The DTA. And so the questions are whether you're a borrower or a grantor or whether you can make a claim because there was no foreclosure and it's gone to a judicial foreclosure. Those questions are still at the core, the issues that we have to address. Is that right? That's true. And I'm sorry if I confused the court, but that's why I kept the narrow focus in the briefing because it appeared to me that once the district court said that we could have pursued any of the other claims, the CPA or the negligent misrepresentation once the Walker decision came down. So wait a minute. So after Walker and now there's Frias. Yes, Your Honor. Frias came down. And Frias wipes out your DTA claim. Correct. Correct. You have to wait until there's a foreclosure before you can bring a straight DTA claim. Correct. Yes. Right. Okay. So the district court had a different focus on the DTA when the district court made its ruling. Correct. And it just applied that across the board. Yes, Your Honor. Knocked out the CTA claim as well. Yes, Your Honor. But the district court acknowledged that apart from standing issues, you could probably have a CTA claim. Yes. But he nonetheless dismissed the whole thing, right? Yes. So when it comes to us, you don't argue alternative. You never said, well, you know, he erred. We may no longer, part of his ruling may have been correct or whatever, but nonetheless with respect to the CTA claim, he was wrong. Well, I actually conceded, I said that he was right when he followed Walker. He was wrong for dismissing the whole thing. Yes, Your Honor. But I said his analysis of the applicability of the CPA to this cause of action using the Walker analysis was correct. And I said I did not appeal that portion of the order because I believe it was correct. So I want to go back to Judge Ebel's question to you. So do you have, in order to prevail, let's assume that you preserved your CPA claim. In order to prevail on your CPA claim, do you still have to show that you're a borrower or a grantor? Can you not claim that you're simply the owner of the property and therefore entitled to be treated sort of fairly and trying to figure out how to make the payoff to bring everything square on the books? Yes. So in other words, if I wasn't relying on In order to have proven a DTA claim, you did have to be a borrower or a grantor. Do you still have to be a borrower or a grantor in order to maintain your CPA claim? Well, I think you could certainly pursue a CPA claim just saying I have some interest in the property. But because this case is all about the demands that were made in connection with the nonjudicial foreclosure, that is why the focus was on the requirements of the deed of trust act as constituting, as demonstrating what the errors were that she was complaining of because this case was all about the amount of monies that were being demanded in order to preclude the foreclosure sale. So that's why the focus has been in my briefing on the deed of trust act requirements because that is what is supporting the Consumer Protection Act claims. I guess you could in general file some CPA claim that just says in general I think you're wrong, but it still goes back to the requirements of the deed of trust act and what can be demanded in the context of a nonjudicial foreclosure sale. So I don't know how I could have pleaded a case on the Consumer Protection Act based upon the Consumer Protection Act that didn't deal with the deed of trust act requirements since that's what it was all about. Sure. I understand how they're related. Now, I guess I'm still trying to get to the bottom line. So in order to prevail on your CPA claim, do you have to prove that your client was a borrower or a grantor? Or do you have to prove that she suffered some injury? I think she has to prove that she suffered some injury. But she doesn't have to suffer that injury in a capacity as a grantor or a borrower. I think she could suffer it in a capacity as an owner of the property. Whether or not she was a grantor or a borrower. That's correct. But I still think it goes back to the deed of trust act. I understand it goes to the DTA, but the Washington Supreme Court seemed to take a much broader view of what the DTA might cover in the absence of a judicial foreclosure. Absolutely, I agree. And certainly the CPA is supposed to be construed broadly. But again, I'm sorry. I think I've answered your question. Do you want to save the balance of your time for rebuttal?  Okay. Thank you, Your Honors. Good morning, Your Honors. I'm Jan Chilton for the defendants. I think the court started this argument on the right point, which is that the Frias decision gets rid of the DTA claim. And the only question really before the court is whether the plaintiff has preserved the CPA claim on appeal. How could she have anticipated what the Washington Supreme Court was going to do? She doesn't need to. All she needs to do is what any plaintiff must do when appealing from dismissal of a complaint, and that is show that she has alleged all of the elements of the cause of action alleged all the facts which show she satisfies all the elements of a cause of action, which she could do under the CPA by showing that she met all of the five requirements of a CPA claim. And they're different from a DTA claim. Well, the district court didn't explore those five requirements, did it? Not in its written decision, no. It just dismissed the case. It did. But that doesn't change the burden on appeal because the court's review of a dismissal is de novo. If the district court had had the benefit of the Frias case, it probably wouldn't have done what it did. I dispute that, Your Honor. We don't know. Well, we don't know. That's true. I mean, I didn't look at all the elements of a CPA claim. I'll tell you that right now. I did. Well, enlighten me. The five elements are an unfair or deceptive act or practice occurring in trade or commerce that impacts the public interest, injury to plaintiff's business or property, and the injury must be causally related to the unfair or deceptive act. And that comes from the Hangman Ridge Training Stables versus Safeco Title Insurance Company case of the Washington Supreme Court. Those elements were argued on the motion to dismiss. And we contended below that they had not been met by this complaint. Where did she fail? Where did the allegations fail? Well, in several respects. First, on the public interest, this was just a one-on-one affair with no greater impact. And secondly, on damage and causal relationship. Now, in that regard, it's... Well, let me go back for a moment. And that's just the problem with her appellate brief. She doesn't discuss any of that in the appellate brief. So even if she could show a DTA violation, it wouldn't necessarily result in a CPA claim because all the DTA gets her to is an unfair or deceptive act or practice. That is to say the violation which can, if all the rest of the elements of the CPA claim are properly pled, get you a CPA claim. But she never tried to show that she pled all those other elements. And the one most obviously missing is damage. I direct your attention to paragraphs. Well, it's really that the CPA claim is the second in her complaint. It's paragraphs 3.4 through 3.9. And 3.9 is the only one that even comes close to mentioning damage. And it says that the defendants engaged in a pattern and practice of violating the CPA, all of these violations entitled plaintiff to damages. That's the extent of it. I thought there was some allegation about charging excessive fees. Well, no, not charging excessive fees, including excessive fees in the reinstatement demand. But she never paid the reinstatement sum, so she never incurred those damages if there were any. Well, so my point is that the district court never ruled on any of this. That is true. That doesn't get you a reversal on appeal. Except by dismissing the case. No, you have to show on appeal. The court didn't address these factors, but the court did dispose of the matter. Oh, absolutely, it disposed of the matter. And my point is that to get a reversal on appeal, you have to show prejudicial error. If this case was properly dismissed for whatever reason, you affirm. And the plaintiff has not shown that it was not proper to dismiss the CPA claim on one of the grounds that the defendant advanced below. That's her burden on appeal. She can't just say the trial court, the district court, gave the wrong reasons for a correct result. Well, we can affirm on any basis supported by the record. That's true. We don't have to. Oh, I disagree, Your Honor. Of course, Your Honor. Even if they don't raise an issue on appeal, we don't have to invoke waiver every time. We have discretion. All right, that is true. But is there any reason why you wouldn't impose a waiver here where it's clear that, for example, let's take negligent misrepresentation. She also alleged negligent misrepresentation. Apart from those two words, have you heard anything about that claim either here or in the briefing? No. You know, why revive that claim, which was never briefed? The same is true of the CPA claim. It was never briefed. And this is not something that was sprung on Ms. Hulsman with great surprise. She was counsel in Frias. She knew what was coming down the road. I mean, not the ultimate result, of course. She isn't that prescient, and neither am I. I don't know how this court is going to rule. But she was certainly aware of the issues that were raised and the types of claims that could be made, and she chose not to brief them here. And, as I said, the DTA claim is gone. I think she's admitted that. The only claim that's up for consideration is the CPA claim, and she hasn't told you where in her allegations she's alleged any damage to business or property that would support that claim and was caused by, excuse me, these supposedly excessive reinstatement demands that she never paid. You're focusing on the damages element of the CTA claim. Yes. She's saying that the cause of action, the violation, was a violation of the DTA. That's true. And when she's asserting a violation of the DTA, does that include the DTA requirements that she be a borrower or a grantor and that there be a private foreclosure, I mean a nonjudicial foreclosure? Well, let me answer that because there are two parts to that question, really. The first, let's set the context. As I said, the CPA requires an unlawful, unfair, or deceptive act. Right, but she has defined that as a DTA violation. Exactly. If that's the only act that she's going to claim. . . Isn't that right? Isn't that the only act she's claiming? Well. . . Other than the common law claim. She was vacillating here before you as to whether that was true or not, I think. But, okay, let's say that's the violation. To prove the violation, it seems to me, she would have to show that she's a borrower or a grantor. But that doesn't get her a CPA claim. That's just proving one element of a CPA claim, the violation. She still has to show all the other elements. But I'm just wondering if that isn't at least one element that is on the table here for her as an obligation. Yes, it is. Counsel, I'm looking at Freas on page 538. And here the court says, without question where a plaintiff actually loses title to her house in a foreclosure sale or actually remits foreclosure fees, the plaintiff has suffered injury to his or her property. Absolutely. That would be the DTA claim. However, those injuries are not necessary to state a CPA claim. Other business or property injuries might be caused when a lender or trustee engages in an unfair or deceptive practice in the nonjudicial foreclosure context. Why doesn't she qualify as sort of that other business or property injury? Because she hasn't alleged any. I got the allegation problem. I got the waiver problem. But in theory, why isn't she qualified, why isn't her client qualified to assert an other injury as the owner of the property even if she's not the borrower or the grantor? Oh, I'm sorry. You're going back to does she have to be a grantor or a beneficiary to prove an injury? In order to prove a DTA violation for purposes of the CPA because the CPA, the court has said, is going to be broader than the DTA by itself. The damage, yes. The violation, no. There are two distinct elements. To get a violation of the DTA, she asked, it seems to me, prove she's a borrower or a grantor. To prove damage, yes. Damage can be broader than foreclosure and harm to an interest, say, of a junior lien borrower. Under your theory, then, you could never bring a CPA claim unless you were also qualified to bring a DTA claim. You would just have a broader claim for damages. Is that correct? Is that your argument? Well, I mean, there are loads of CPA claims that have nothing to do with the… I understand that. But if you don't have anything else other than something that relates to property that would qualify under DTA? Well, it seems to me you could still, if you have a claim that's related to a mortgage, it doesn't have to be a violation of the DTA to violate the CPA in some circumstances. I mean, if, for example, you can invent circumstances where the practice is unfair or deceptive quite without respect to whether it violates the DTA. And in those circumstances, you're quite right. So, for example, if the lending institution were not returning phone calls or were lying to you about what the payoff was in order to preserve the property, that wouldn't violate the DTA, but it might violate the CPA. It might. Okay. Isn't that her claim here? Well, she's… Did she tie herself irrevocably to the DTA? Your Honor, Judge Egoff, I believe, just told me that that's what she'd done here. I'm not telling anything. I'm asking. Oh, I'm sorry, Your Honor. Far be it from me to put words in your mouth. No, no, no. I mean, we're here to find out your arguments and your positions. When we're telling, I guess that's when you'll read it in the opinion. Indeed, I will. Now, the point is, I think, she may have claims about the CPA violations other than the DTA, but she has definitely not preserved those on appeal because the only thing she's argued on appeal is a DTA violation, and it seems to me that, at best, she can be said to have preserved as the basis of a CPA claim the DTA violation that she's argued about. That's the most she can have on this appeal, and she hasn't shown the rest of the elements of a CPA violation stemming from that. If the Court has no further questions, I'll sit down. Thank you very much. So, turning to Your Honor's question, judged by me, regarding FRIAS, further in the FRIAS opinion, the Court quite clearly says that even if there's monies demanded that are not paid, that can constitute an injury under the Consumer Protection Act, and that was the basis of the FRIAS decision. Counsel is correct. It was my case. And Ms. FRIAS had not been foreclosed either. She had not paid the fees, and one of the arguments that have been made is that she, therefore, couldn't have suffered damages or injuries because she hadn't paid that. Did you tell the Washington Supreme Court that the CPA was broader than the DTA and that a successful CPA claim did not turn on success on the DTA claim? That wasn't the form that the argument took. The case was certified questions from Judge Peckman, and it really turned on, first of all, the question of whether or not a straight Deed of Trust Act violation applied, and then if it did not, what other claims could you pursue based upon Deed of Trust Act violations? And so ultimately that was the focus of the court's decision. Were you surprised by the result in the FRIAS decision on the CPA? On the CPA? Yeah. Was this a pleasant surprise for you? Well, actually it wasn't a surprise because Bain was my case also, and I certainly thought that Bain— If it wasn't a surprise, then why didn't you raise the issue here? You know, I went back and looked at the order, Your Honor, and perhaps I'm wrong, and if so, I guess we're going to— but I looked at it as the court not even ruling on that issue except to the extent that it said Walker applied, and I conceded in my briefing to this court that I agreed with the court's— the district court's analysis regarding the applicability of Walker and that Walker would allow those claims to survive, and it was not appealing, that part of the decision, and that's how I looked at the order when I was doing my briefing. I looked at the order and thought that was the proper way to interpret. Yeah, I'm just going to let the clerk know that the clock was not counting down. And so I apologized to the court. That was how I looked at it, which is why I wrote my brief the way I did and only looked at whether or not the Deed of Test Act allowed the standing issue because I looked at the district court's order as really not focusing on anything else except just saying standing gutted everything. Even the negligence claims or the common law claims? Yes, Your Honor, that's not as important, I think, as the CPA claim, and certainly that was the focus even of the briefing on the motion to dismiss was really on the DTA and the CPA claim. What do you mean by it's not as important? The negligence claim isn't before us now, is it? In essence, it's probably not, Your Honor, now. But turning to the court's questions regarding the applicability of the Consumer Protection Act, the Freas case makes clear that violations of the Deed of Trust Act do constitute an unfair or deceptive act or practice, that it does occur in trade and commerce, and that there is a public interest impact when it's part of a business model. An injury to plaintiff, and as we just talked about a moment ago, that can be an injury or damage. And so Freas makes clear that even if monies are demanded and you don't have to pay, that that can be an injury. In this case, we also had a motion for temporary restraining order, which occurred in the state court before this got to the district court, where Ms. Barnhart testified regarding the attorney's fees that she incurred in obtaining that adjunctive relief, and that is part of the record at ER 33 through 97. So she had testified regarding out-of-pocket expenses that she incurred in investigating the claims and pursuing the adjunctive relief, and that issue was addressed in Walker, where the court said investigative costs can be recoverable. And then we have the causal element on the CPA claim, and at the end of the day, the causation is quite clear. The defendants demanded money from her. She attempted to pay. She questioned whether or not they were accurate, tried to get correct information. We outlined with specificity in the complaint the problems with the conflicting representations and the ever-increasing dollar amounts, and it's quite clear that those dollar amounts were being inflated improperly. There was also testimony from myself at the TRO hearing regarding other clients of mine who had experienced the same problem with this servicer. So there was evidence in the record that supported those claims, and again, when I went back to the court's order, the district court's order, the court just ignored it all and really just focused on standing, and that's why I did my brief on that and relied upon the court's reliance on Walker to essentially say that other claims were preserved, but it didn't matter because my client didn't have standing, and that's why the focus was on the borrower-grantor relationship as well as the owner relationship. Did the court have other questions? Just out of curiosity, since we've read all of this, what happened to the judicial foreclosure proceeding? Nothing has happened on the property at all. My client has the money to pay, but nothing's happened with this, so it's really been stalled, but no judicial foreclosure has been instituted. Our position, although this wasn't substantially briefed, our position is that she recorded the quick claim deed that was signed by her mother when her mother was alive, and that was a means of preserving having to go through a probate. But at the end of the day, we think really the matter comes down to we have a case where somebody owns a piece of property and gets it from whoever leaves it to them and owns that property and therefore has an interest in that property and is going to be deprived of that property if they don't pay the amounts demanded, and we maintain that the amounts demanded here were greatly inflated and that she had the right to contest it under the plain language in the Deed of Trust Act and that she had standing to pursue her claims. Okay. Thank you very much. Thank you. The matter is submitted.
judges: Ebel, Paez, Bybee